AO 91 (Rev. 08/09) Criminal Complaint

# UNITED STATES DISTRICT COURT
for the
Southern District of Ohio

FILED
RICHARD W. NAGEL
CLERK OF COURT
OCT -9 2026 10:33 A
U.S. DISTRICT COURT
SOUTHERN DISTRICT
OF OHIO-DAYTON

United States of America
v.
Timothy Farr

*Defendant(s)*

Case No. 3:26MJ00431

## CRIMINAL COMPLAINT BY TELEPHONE OR OTHER RELIABLE ELECTRONIC MEANS

I, the complainant in this case, state that the following is true to the best of my knowledge and belief.

On or about the date(s) of August 2026 to October 2026 in the county of Montgomery in the Southern District of Ohio, the defendant(s) violated:

| *Code Section* | *Offense Description* |
| --- | --- |
| 21 USC s. 846 & 841(b)(1)(B)-(C) | conspiracy to possess with intent to distribute and to distribute 50 grams more of a mixture or substance containing a dectable amount of methamphetamine and a mixture or substance containing a detectable amount of fentanyl, both Schedule II controlled substances |
| 21 USC s. 843(b) | use of a communication facility |

This criminal complaint is based on these facts:

See Attached Affidavit of Janna Penfield

☑ Continued on the attached sheet.

Janna Penfield
*Complainant's signature*

Janna Penfield, ATF SA
*Printed name and title*

Sworn to by reliable electronic means -- namely, telephone.

Date: 10/9/2026

*Judge's signature*

City and state: Dayton, Ohio

Caroline H. Gentry, United States Magistrate Judge
*Printed name and title*

# AFFIDAVIT

Your Affiant, Janna Penfield, deposes and states:

## INTRODUCTION

1. Your Affiant is a Special Agent with the Bureau of Alcohol, Tobacco, Firearms and Explosives ("ATF"), United States Department of Justice, and has been so employed since August 2018. Prior to becoming a Special Agent with ATF, I was a United States Probation Officer with the United States Probation Department through the Southern District of Ohio from October 2014 through January 2018. Additionally, from August 2007 through October 2014, I was a Parole Officer through the State of Ohio, which included a special assignment position with the United States Marshal Service as a Task Force Officer on the Southern Ohio Fugitive Apprehension Strike Team. I have completed the Federal Criminal Investigator Training Program and the ATF Special Agent Basic Training at the Federal Law Enforcement Training Center in Glynco, Georgia. I have also completed the Initial Pretrial and Probation Training Program at the Federal Law Enforcement Training Center in Charleston, South Carolina, and the State of Ohio Parole Academy in Columbus, Ohio. In addition to the firearms, arson, and explosives-related training received in these courses, Your Affiant has also conducted and participated in numerous investigations involving firearms, firearms trafficking, and narcotics.

## PURPOSE OF AFFIDAVIT

2. I make this affidavit in support of criminal complaints against, and arrest warrants for:

a. Timothy FARR for violations of 21 U.S.C. §§ 846 and 841(b)(1)(B)-(C) (conspiracy to distribute and to possess with intent to distribute 50 grams or more of mixture or substance containing a detectable amount of methamphetamine and a mixture or substance

containing a detectable amount of fentanyl, both Schedule II controlled substance); and 21 U.S.C. § 843(b) (use of a communication facility to facilitate a Title 21 offense);

b. Jessie STEVENS for violations of 21 U.S.C. §§ 846 and 841(b)(1)(B) (conspiracy to distribute and to possess with intent to distribute 50 grams or more of a mixture or substance containing a detectable amount of methamphetamine, a Schedule II controlled substance); and 21 U.S.C. § 843(b) (use of a communication facility to facilitate a Title 21 offense);

c. Michael DRISCOL for violations of 21 U.S.C. §§ 846 and 841(b)(1)(C) (conspiracy to distribute and to possess with intent to distribute a mixture or substance containing a detectable amount of methamphetamine, a Schedule II controlled substance); and 18 U.S.C. §§ 922(g)(1) and 924(a)(8) (felon in possession of a firearm);

d. Jeremy SMITH for a violation of 21 U.S.C. §§ 846 and 841(b)(1)(A) (conspiracy to possess with intent to distribute and to distribute 500 grams or more of a mixture or substance containing a detectable amount of methamphetamine and 400 grams or more of a mixture or substance containing a detectable amount of fentanyl, both Schedule II controlled substances);

e. Eugene WADE for a violation of 21 U.S.C. § 856(a)(2) (maintaining a drug premises).

3. The statements contained in this Affidavit are derived from information provided to me by other law enforcement agencies, from my review of records and reports relating to the investigation as well as my own investigation of this matter. This Affidavit does not include every fact known to me regarding this investigation but seeks to summarize relevant information.

## SUMMARY OF PROBABLE CAUSE

4. Since April 2026, ATF and state law enforcement agencies have investigated Timothy FARR and Jeremy SMITH for their roles in the distribution of controlled substances, including fentanyl and methamphetamine, in southern Ohio. As explained below, during this investigation, law enforcement identified a series of people who helped FARR and SMITH facilitate these drug trafficking activities, including: Jessie STEVENS, Michael DRISCOL, and Eugene WADE.

5. In or around April 2026, law enforcement received information implicating FARR in the drug trade. Around that time, local Ohio law enforcement received an anonymous tip that a black male with the nickname "Money" used telephone number 513-963-8533 (i.e., the FARR Phone) to distribute fentanyl and methamphetamine in the greater Dayton, Ohio area. As detailed below, law enforcement confirmed that FARR was "Money." Additionally, law enforcement obtained subscriber information for the FARR Phone, and its service provider confirmed that FARR was the subscriber for that number.

6. Law enforcement performed a criminal history check on FARR and learned that he had a 2023 federal conviction in the U.S. District Court for the Southern District of Ohio for being a felon in possession of a firearm and was sentenced to 21 months of imprisonment. Throughout this investigation, FARR remained on federal supervised release and reported that he lived at an apartment in Middletown, Ohio, and that he worked at Cracker Barrel in that same town.

7. During August 2026, while investigators performed surveillance of a white Buick SUV in connection the investigation of suspected drug dealer Jeremy SMITH,[1] they soon realized

[1] Based on a review of court records, Jeremy SMITH has two prior federal convictions for drug trafficking – namely, both for possession with intent to distribute fentanyl (2018, 2022). SMITH remains on supervised release to this Court.

that FARR – not SMITH – was driving the SUV. Surveillance soon saw FARR conduct what appeared to be a hand-to-hand drug transaction. Specifically, FARR parked the SUV in a lot and another vehicle soon arrived. A person exited the vehicle and approached FARR in the SUV. The person reached inside FARR's SUV and then returned to their own vehicle before driving away. Following the conclusion of this suspected narcotics transaction, FARR was followed back to his residence in Middletown, Ohio.

8. On or about August 14, 2026, law enforcement conducted surveillance near FARR's Middletown residence and observed a white Honda sedan parked outside. Investigators saw FARR exit the apartment, get into Honda's driver seat, and leave the area.

a. Surveillance saw FARR travel to a local BMV, return to the residence, and then ultimately travel to Cracker Barrel where he works. Law enforcement noticed that, upon arriving at Cracker Barrel, FARR briefly met with a gold sedan before making his way to the entrance of Cracker Barrel. FARR appeared to keep his watch on the gold sedan as he approached the restaurant. Law enforcement monitored the gold sedan and stopped it a short distance from the Cracker Barrel.

b. During the stop, the passenger in the gold sedan admitted that they had just purchased fentanyl from FARR in the Cracker Barrel lot. The passenger explained that FARR required them to use the drugs in his presence to confirm that they were not law enforcement. The passenger explained that they purchased a gram of fentanyl from FARR on an almost daily basis for the past year. According to the passenger, to make these purchases, they contacted FARR at the FARR Phone. The passenger explained that FARR sold drugs to the passenger from various locations including: the Cracker Barrel lot, FARR's apartment in Middletown as well as a home in Dayton, Ohio (believed to be 21 Ridge Avenue detailed below). The passenger indicated that

the home in Dayton contained bulk drugs that FARR sold. During a search of the vehicle, police discovered a scale within it; the scale tested positive to the presence of fentanyl.

c. Law enforcement also seized the passenger's telephone. A subsequent search of the device reflected approximately 174 text messages and 36 calls between the passenger and FARR, including texts and calls to the FARR Phone, over the past year; the text messages reflected drug purchases by the passenger from FARR throughout that time.

9. During September and early October 2026, law enforcement performed near daily surveillance at 21 Ridge Avenue, Dayton, Ohio – a known location associated with SMITH and FARR. As detailed below, throughout that time, law enforcement watched as SMITH and FARR engaged in drug sales from the residence. For instance:

a. On or about the late hours of September 7, 2026, law enforcement observed a Honda belonging to Jessie STEVENS arrive at 21 Ridge Avenue. FARR walked down the steps of 21 Ridge Avenue, briefly approached the car, and then walked back toward the residence. A woman identified as STEVENS exited the Honda and walked toward the house. SMITH soon arrived at 21 Ridge Avenue. (GPS data from a court-authorized tracking device on his car reflected that SMITH had left his home at 3074 Umberoak Drive immediately before arriving outside of the Ridge Avenue residence). SMITH exited the vehicle and approached an SUV that also recently had arrived near the home. SMITH reached into his pocket with his right arm and then placed his right arm through the open window of the SUV. Based on my training and experience, this short-term traffic followed by brief interactions are consistent with drug trafficking activity. SMITH then walked toward 21 Ridge Avenue and approached its front porch.

b. On or about the late hours of September 9, 2026, law enforcement performed surveillance at 21 Ridge Avenue, Dayton, Ohio. Around that time, FARR and SMITH

arrived at this residence in separate vehicles. Both ultimately went inside of the home. Shortly thereafter, a Honda belonging to Jessie STEVENS arrived and parked in front of the house. FARR exited 21 Ridge and entered the backseat of the Honda. FARR remained in the Honda for several minutes and could be seen counting money. Given these circumstances, I believe that FARR entered the Honda and sold the driver – likely, STEVENS –drugs; in exchange, FARR received cash, which he counted in the back of the car.

c. On or about September 16, 2026, law enforcement performed surveillance at 21 Ridge Avenue and watched SMITH arrive at and enter this residence. Shortly thereafter, a man arrived at the residence carrying a backpack that appeared empty. The man entered 21 Ridge and left a short time later, carrying what now appeared to be a weighted backpack. Later that day, an unknown black car parked in front of 21 Ridge. SMITH walked from the residence and handed the driver of the black car an object, and the driver handed SMITH something in return. Based on my training and experience, I believe that SMITH sold drugs to the driver of the car in exchange for cash.

d. Law enforcement observed a similar pattern of drug trafficking activity involving SMITH and FARR at 21 Ridge throughout the remainder of September 2026 and early October 2026.

10. On or about September 15, 2026, surveillance observed SMITH arrive at 21 Ridge and carry into the residence two heavy bags. SMITH left the Ridge residence, entered his vehicle and traveled to another house, where he remained for a period of time. SMITH departed that house, entered his car, and drove away. GPS data from SMITH's car tracked it to 1925 Arlene Avenue, Dayton, Ohio, where it remained for approximately 10 minutes before returning to SMITH's home at 3074 Umberoak Drive. Based on my training and experience, I know that

SMITH's movements were consistent with moving bulk drugs between drug stash houses before he returned to his own residence.

11. On or about September 22, 2026, law enforcement conducted a trash pull at 1925 Arlene Avenue. Specifically, there were two trash cans located at the end of the driveway of this residence, and law enforcement obtained the trash bags within them. Law enforcement reviewed the contents of the trash, and it contained indicia of drug trafficking including multiple baggies with off white residue in them, an empty box of Ziploc bags, and a gallon Ziploc bag. Law enforcement found a piece of mail addressed to the Arlene residence in the trash. Additionally, officers recovered a green wristband for a small child with the name "SMITH" written on it. Notably, throughout this investigation, law enforcement observed SMITH and his paramour with a small child. Officers reviewed GPS data for one of SMITH's vehicles collected pursuant to a warrant and, during August 2026, the vehicle had made multiple stops at 1925 Arlene Avenue.

12. On or about September 23, 2026, law enforcement seized an ounce of methamphetamine that FARR sold to STEVENS that day from 21 Ridge Avenue, Dayton, Ohio. Specifically:

a. On that day, surveillance captured FARR arrive at and enter 21 Ridge Avenue. Soon thereafter, SMITH arrived at the residence. Shortly thereafter, Jessie STEVENS' car parked in the alleyway behind 21 Ridge Avenue and remained there for approximately 30 minutes. When STEVENS' car left 21 Ridge Avenue, law enforcement followed it.

b. A distance from 21 Ridge Avenue, law enforcement performed a traffic stop on the vehicle and discovered STEVENS as well as Individual A within the car. During the stop, a certified drug dog alerted to presence of drugs in the vehicle. An ensuing probable cause search of the car discovered within it an ounce of crystal substance that field tested positive for

methamphetamine. Officers also discovered in the car two cellular telephones.

c. Officers Mirandized STEVENS, and she agreed to speak with them. STEVENS advised that she had arranged the purchase of methamphetamine in Dayton, Ohio, from a person known to her as "Money." STEVENS explained that she had brokered the sale of methamphetamine from "Money" to Individual A. STEVENS explained that she arranged these ounce sales of methamphetamine between "Money" and Individual A almost every other day for "awhile." STEVENS advised that she had been purchasing drugs – including methamphetamine – directly from "Money" at various locations for months. STEVENS advised that "Money" sold drugs to her at his apartment in Middletown, Ohio, in the parking lot of the Cracker Barrel where "Money" worked, and at the Ridge Avenue residence where she had just left. STEVENS advised that "Money" arranged these sales via telephone. STEVENS gave officers consent to search her phone. A review of STEVENS' device found a contact for "Money" with a listed number of the FARR Phone. Based on STEVENS' statements, I believe that the person selling her and Individual A an ounce of methamphetamine every other day was FARR.

d. A review of STEVENS' phone confirmed many of her statements. She engaged in multiple text exchanges with FARR in which she ordered from him quantities of methamphetamine that collectively totaled over 50 grams. In the text messages, STEVENS and FARR also discussed supplying multiple gram quantities of methamphetamine for resale to STEVENS' father, Michael DRISCOL. Text messages from the day of the traffic stop also confirmed FARR directing STEVENS to 21 Ridge Avenue to purchase the ounce of methamphetamine.

13. On or about October 7, 2026, law enforcement conducted surveillance of SMITH. On that day, SMITH made trips between 21 Ridge Avenue, 1925 Arlene Avenue, and his

residence on Umberoak Drive. While SMITH was at 21 Ridge Avenue, law enforcement observed traffic at the home consistent with SMITH conducting drug sale there. Based on my training and experience, I believe that SMITH was moving drugs as well as money from these sales between these various residences.

14. On or about October 8, 2026, law enforcement executed state search warrants at a series of locations throughout southern Ohio. Specifically, police served warrants at the following locations and discovered the following items as well as people at them:

a. FARR's apartment in Middletown, Ohio: Upon executing the state warrant at this location, police encountered FARR and STEVENS inside of the residence. Police discovered several grams of methamphetamine as well as drug processing equipment inside of the apartment. The presence of FARR and STEVENS together confirms their involvement with one another.

b. The home of STEVENS' father, Michael DRISCOL located in Logan County, Ohio: Upon executing the state warrant at DRISCOL's home, officers encountered him in the residence. Inside of the home, they discovered multiple firearms, including a Mossberg shotgun which, based on training and experience, I know was not manufactured in Ohio. Officers also discovered a small quantity of methamphetamine. During a post-Miranda interview, DRISCOL advised that he purchased methamphetamine from a person that he knew as "Money", i.e., FARR. DRISCOL indicated that he occasionally sold methamphetamine himself. DRISCOL also admitted that the firearms in the home, including the Mossberg belonged to him. Based on a review of his criminal history, DRISCOL has a prior criminal conviction in 2021 for failing to comply with the order of a signal of police officer, a felony punishable by a term of imprisonment exceeding one year. Given the court records in that case, DRISCOL knew that he had been

convicted of a crime punishable by a term of imprisonment exceeding one year and therefore could not possess the firearm;

c. SMITH's Dayton home on Umberoak Drive: Upon executing the state warrant at SMITH's home, police encountered him as well as his paramour. On SMITH's person and in the home, officers discovered bulk cash totaling thousands of dollars. Police also discovered fentanyl cutting agents inside of the home. Notably, during this months-long investigation, law enforcement never saw SMITH report to a job or engage in any gainful employment. I therefore believe that the currency recovered from the home represents drug proceeds from his drug sales at 21 Ridge Avenue.

d. 1925 Arlene Avenue: Upon the executing the state warrant at 1925 Arlene Avenue, law enforcement encounter Eugene WADE and a female in the home. During the investigation, law enforcement had observed WADE's car at the home and public records, including court records, reflect 1925 Arlene Avenue as his residence. While WADE has some criminal history, it is indicative of an individual who is likely a drug user. Based on my training and experience, I know that drug traffickers such as SMITH often store bulk drugs at the homes of such individuals, paying them in drugs for allowing contraband to be stored at their homes. Upon searching the residence, officers discovered in plain view baggies of cocaine as well as small amounts of methamphetamine. Hidden throughout the house – such as in ceilings – police discovered over 500 grams of substances that tested positive for the presence of cocaine as well as over 500 grams of substances that tested positive for methamphetamine/fentanyl mixtures. There was also bulk cash hidden at the residence. Given SMITH's frequent movements between 21 Ridge Avenue, 1925 Arlene Avenue, and his home at Umberoak Drive, I believe that he used: 21 Ridge Avenue (along with FARR) as a location at which to supply smaller quantities of drugs to

other drug dealers and addicts; 1925 Arlene Avenue as location at which store larger quantities of drugs for later sales at 21 Ridge Avenue; and Umberoak Drive as a location at which he kept his drug proceeds as well as cutting agents. I further believe that WADE, the residence of 1925 Arlene Avenue, was aware of SMITH's activities and permitted SMITH to store drugs there. Given the open presence of drugs in the house, I believe that SMITH allowed WADE to use small amounts of controlled substances in exchange for storing SMITH's drugs at the home.

e. 21 Ridge Avenue: Upon executing the warrant at this location, law enforcement discovered indicia of drug trafficking, including multiple firearms, drug processing equipment, cutting agents, and suspected controlled substances. Notably, the color and texture of the suspected controlled substances at 21 Ridge Avenue matched those discovered at 1925 Arlene Avenue.

15. In summary, I believe that FARR and SMITH worked together to sell drugs from 21 Ridge Avenue. Law enforcement observed both men conducting suspected drug transactions from the residence. The recovery of firearms, cutting agents and suspected narcotics from that residence confirms these conclusions. In conducting his drug sales, FARR regularly supplied Jessie STEVENS and her father, Michael DRISCOL, with methamphetamine, who both brokered or sold these drugs in their own right. FARR's sales to STEVENS totaled in excess of 50 grams of methamphetamine mixtures. For his part, SMITH appears to have supplied the drug house at 21 Ridge Avenue, while storing bulk amounts of drugs at 1925 Arlene Avenue for safekeeping. The resident of 1925 Arlene Avenue, Euguene WADE, appears to have known about SMITH's activities given the open presence of cocaine and methamphetamine in his home. Finally, the presence of bulk cash at SMITH's own home tends to confirm that he, who has no known legitimate employment, makes his living trafficking drugs.

16. Based upon the above-listed facts and circumstances, Your Affiant believes and asserts that there is probable cause to issue the above requested complaints.

Janna Penfield
Janna Penfield, Special Agent
Bureau of Alcohol, Tobacco, Firearms and Explosives

This Affidavit was sworn to by the Affiant by telephone after this affidavit was submitted to me, on this 9th day of October 2026.

Honorable Caroline H. Gentry,
United States Magistrate Judge
Southern District of Ohio
Western Division